UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
DENFIELD JOSEPH,                                                    **COMPLAINT**

                                                                   **17 cv 308**
                                                                   **ECF Case**


                          Plaintiff,

                  vs.

The CITY OF NEW YORK,
NEW YORK CITY DETECTIVES
JOHN DOES 1 – 3,
in their individual and official capacities,
                                                                   **JURY TRIAL DEMANDED**

                          Defendants.
--------------------------------------------------------x

Plaintiff Denfield Joseph, by his attorney, Cyrus Joubin, complaining of the Defendants,

respectfully alleges as follows:


## PRELIMINARY STATEMENT

1.   This civil rights action arises from the false arrest, unlawful strip search, and

denial of the right to a fair trial of Denfield Joseph ("Plaintiff") at the hands of NYPD

Detectives, who baselessly accused Plaintiff of being involved in a drug sale near Times

Square.  Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section

1983") against the individual defendants for false arrest and imprisonment, denial of the

right to a fair trial, illegal strip search, and failure to intervene, and a *Monell* claim

against the City of New York for the same constitutional violations.  Plaintiff seeks

compensatory and punitive damages, costs, disbursements, and attorney's fees pursuant

to applicable state and federal civil rights law.

## JURISDICTION

2.   This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and

the Fourth Amendment to the United States Constitution.  Jurisdiction is conferred upon

this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress

for the violation of Plaintiff's constitutional and civil rights.

## VENUE

3.   Venue is proper in the United States District Court for the Southern District of

New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in

this district.

## JURY DEMAND

4.   Plaintiff respectfully demands a trial by jury on each and every one of his

claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

5.   Plaintiff Denfield Joseph is a United States citizen and at all relevant times a

resident of the City of New York, State of New York.

6.   The individually named defendants are and were at all times relevant herein

officers, employees and agents of the New York City Police Department ("NYPD").

7.   Each individual defendant is sued in his individual and official capacity.  At

all times mentioned herein, each individual defendant acted under the color of state law,

in the capacity of an officer, employee, and agent of defendant City of New York

("Defendant City").

8.   Defendant City is a municipality created and authorized under the laws of

New York State.  It is authorized by law to maintain, direct, and to supervise the NYPD,

which acts as its law enforcement agent and for which it is ultimately responsible.

## STATEMENT OF FACTS

9.     On the evening of December 4, 2015, after work, Plaintiff went to Langan's Pub and Restaurant ("Langan's"), an Irish pub at 150 West 47th Street, near Times Square in Manhattan.

10.     After having a drink, around 7:30 p.m., Plaintiff went outside and saw an acquaintance, Chauncey Westwood ("Mr. Westwood").

11.     Talking with Mr. Westwood, Plaintiff stood outside Langan's and smoked a cigarette.

12.     At no point with Mr. Westwood or at any time prior to seeing Mr. Westwood did Plaintiff engage in any suspicious or illegal activity.

13.     After Plaintiff stood outside for about ten minutes, two male detectives in plain clothes – Detective John Doe 1 ("Det. Doe 1") and Detective John Doe 2 ("Det. Doe 2") – approached Plaintiff and Mr. Westwood and ordered them to get against the wall.

14.     Plaintiff and Mr. Westwood complied with this order, facing the exterior of Langan's.

15.     Det. Doe 1 and Det. Doe 2 subsequently handcuffed the two men behind their backs.

16.     Around the time Plaintiff was handcuffed, two other detectives in plain clothes appeared and began talking to Det. Doe 1 and Det. Doe 2.

17.     Plaintiff's arrest number was M2015690692.

18.     The detectives told Plaintiff that he "fit a description" and that he was observed "selling cocaine" to an undercover officer.

19.     But this accusation was false.  Plaintiff never sold cocaine or anything resembling cocaine to anyone.

20.     The only things Plaintiff had sold that day were comedy tickets for the LOL Comedy Club in Times Square, as this was his job.

21.     The detectives transported Plaintiff and Mr. Westwood in a van to a police precinct, which, upon information and belief, was the Midtown North Precinct (the "Precinct").

22.     At the Precinct, Detective John Doe 3 ("Det. Doe 3") subjected Plaintiff to a degrading strip search inside a holding cell.

23.     Det. Doe 3 ordered Plaintiff to remove his pants and underwear, and to squat and cough naked, in order to see that nothing unlawful was being hidden in Plaintiff's rectum.

24.     Nothing unlawful or wrongful was found on – or in – Plaintiff's person.

25.     Similarly, nothing unlawful or wrongful was recovered from Mr. Westwood when he was strip-searched.

26.     At the Precinct, Det. Doe 1 and Det. Doe 2 concocted a false account of Plaintiff's conduct, deliberately fabricating a narrative that Plaintiff engaged in a cocaine sale in violation of New York Penal Law Section 220.39(01).

27.     After a few hours in the Precinct, Plaintiff was transported to Central Booking, at 100 Centre Street, in lower Manhattan.

28.     Plaintiff was then detained in the holding cells of Central Booking.

29.     Det. Doe 1 and Det. Doe 2 provided their fabricated account of Plaintiff's cocaine-selling conduct to the New York County District Attorney's Office (the "DA").

30.     The DA did not believe the fabricated account provided by Det. Doe 1 and Det. Doe 2 against Plaintiff.

31.     On December 5, 2015, while Plaintiff was in the holding cells of Central Booking, the DA decided not to bring criminal charges against Plaintiff.

32.     The DA also declined to prosecute Mr. Westwood.

33.     The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

34.     There is a systemic failure by the City to identify, discipline, and supervise NYPD officers who fabricate criminal charges, a failure so widespread, obvious, and tolerated as to constitute a custom and policy of Defendant City.

35.     The NYPD's flaccid response to lying officers – particularly in the context of filing false charges – constitutes a destructive custom and policy that fosters a culture of mendacity in the NYPD.

36.     The City has recognized the obvious and significant problem of police officers fabricating criminal charges, but there is no serious mechanism in place by which to curb such conduct or weed out dishonest officers.

37.     The NYPD has no internal programs – not even rudimentary statistical software – that enable it to assess whether a particular Officer or Detective has an unusually high number of allegations of making false statements.

38.     Proportionate and appropriate discipline sends a message to NYPD officers that they are not above the law and are accountable to the people whom they serve.

39.     But NYPD officers usually face only minor discipline or no discipline whatsoever for making false statement on court documents.

40.     The Civilian Complaint Review Board ("CCRB") has no jurisdiction to investigate allegations of fabricated statements by NYPD officers in criminal court documents.  Investigating, controlling, and punishing this type of wrongdoing is the responsibility of the NYPD.

41.     In 1995, by Executive Order No. 18, Defendant City's Mayor created the Commission to Combat Police Corruption (the "Commission") to monitor and evaluate the NYPD's anti-corruption activities.  The Commission fulfills its mandate to monitor the NYPD's performance by reviewing the investigations of the Internal Affairs Bureau ("IAB"), and presenting its findings in its Annual Report.

42.     Since its inception, the Commission has emphasized the importance of appropriately disciplining officers who make false statements.  On the basis of the Commission's recommendations, the NYPD has adopted a False Statement Policy (*see* NYPD Patrol Guide Section 203-08) that mandates termination of officers who intentionally make false official statements regarding a material matter, unless exceptional circumstances exist.

43.     As the Commission stated in its 2013 Annual Report, "Consistent application of the false statement policy is of utmost importance.  It not only enables members of the service to know what they can expect if they make false statements, but it also sends a clear message to members of the service, as well as the public, that the Department will not tolerate such conduct" (pg. 74).

44.     The Commission analyzes false statements in official criminal court

documents, including supporting depositions, criminal court complaints, summonses, and affidavits.  False statements in such documents are of paramount importance because they have the potential to unjustly deprive citizens of their civil liberties and to destroy the lives of innocent people.

45.     Despite the importance of appropriately identifying and punishing officers who make false statements, the NYPD rarely imposes discipline consistent with its stated policy of terminating officers.

46.     Indeed, the gap between its practice and policy is so wide as to make the NYPD's False Statement Policy a sham.

47.     For example, in the 2014 Annual Report, the Commission examined ten cases involving false statements in sworn court documents; in seven of those cases, the subject officers were found guilty but not separated from the police department.

48.     Such findings – which expose the gap between the NYPD's False Statement Policy and practice – can be found in virtually every Annual Report issued by the Commission.

49.     Over the past ten years, in its Annual Reports, the Commission has analyzed numerous forms of false statements and has consistently found that the NYPD "fail[s] to follow its false statement policy; "fail[s] to charge the subject officer with making a false statement although such a charge appear[s] appropriate"; levies "other similar charges…to avoid the imposition of the False Statement Policy's requirement of termination"; and creatively skirts the requirement of termination without justification. And there is no sign of improvement.

50.     In the specific context of fabricated court documents that falsely accuse

people of wrongdoing, the Commission has regularly found grossly inadequate punishments, resulting in guilty officers forfeiting vacation days (usually no more than 30 days) but rarely losing their jobs.

51.     To make matters worse, the instances of false statements analyzed by the Commission is a small fraction of the total instances of false statements that occur within the NYPD.

52.     In the 2010 Annual Report, for instance, the Commission identified only ten IAB cases that included allegations of making an official false statement.

53.     The officers who were caught fabricating statements were unlucky – they were captured on videotape, a civilian reported them, their lies were unwittingly exposed – but most dishonest police officers know they can lie and get away with it.

54.     The number of false statement cases investigated by the IAB in the specific context of court documents is a very small portion of the actual number of instances of material fabrication in court documents.

55.     Defendant City has turned a blind eye to the tens of thousands of criminal cases which are dismissed each year in the Criminal and Supreme Courts of Defendant City; has failed to study how many of those dismissals were due to baseless, fabricated charges; and has failed to proactively look for patterns of fabrication and identify charges that should have never been brought.

56.     Defendant City has no system by which to proactively identify mendacious officers.  It waits for civilians to bring such officers to its attention.

57.     In the ten years prior to December 4, 2015, the number of NYPD investigations into police officers making false statements on criminal court accusatory

instruments that did not arise from civilian complaints was *zero*.

58.     In a criminal justice system where numbers and statistics have become paramount, the inadequacy of the NYPD's supervision and discipline with respect to dishonesty in the filing of criminal charges is exacerbated by the pressure on police officers to meet arrest quotas, or "performance goals," which pressure officers to arrest people and file charges unlawfully, a pressure not tempered by adequate safeguards that protect innocent citizens from being wrongfully arrested and charged.

59.     Because arrests are rewarded, while making false arrests and fabricating charges go largely unpunished, police officers have felt incentivized to engage in false arrests and to fabricate criminal charges.

60.     Such perverse incentives become particularly destructive in the hands of dishonest, undisciplined, unsupervised officers.

61.     Through the data cited herein along with public events (e.g. numerous civil rights lawsuits alleging fabrication every year, ticket-fixing scandals, evidence of an illegal quota system, to name a few) and other information in its possession, the policymakers of Defendant City have been aware of the NYPD's practice of insufficiently punishing – and thereby encouraging – the filing of fabricated criminal charges.

62.     By doing nothing about this practice, the City has demonstrated deliberate indifference to the rights of its citizens.

63.     Unfortunately, under Mayor Bill de Blasio's administration, the NYPD seems more empowered than ever to thumb its nose at the False Statement Policy.

64.     In its 2015 Report, the Commission found that the Department rarely brought charges under the False Statement provision.  "Instead," the Commission writes, "the Department used other Patrol Guide sections to allege misconduct relating to false statements" (pg. 103), sections which do not carry a presumption of termination.

65.     The notion of police officers lying, cheating, fabricating, manipulating, and misleading has become so accepted and commonplace within the NYPD that the pursuit of justice, which is rooted in truth and fact, has become subverted and degraded.

66.     While the vast majority of police officers are decent people, they must operate in a police culture so truth-sick and cynical that their morale is crushed.

67.     NYPD officers see firsthand how roguish behavior is rewarded, trust thwarted, and virtue perverted within their ranks.  The negative incentives created by this sick culture threaten the safety, welfare, and liberty of every citizen.

68.     As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

        a.   Violation of his constitutional rights under the Fourth Amendment to the United States Constitution;

        b.   Severe emotional trauma, distress, degradation, and suffering;

## SECTION 1983 CLAIMS

## FIRST CLAIM

### Deprivation of Federal Civil Rights Under Section 1983

69.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

70.     All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

71.     All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

72.     The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

73.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

### False Arrest Under Section 1983

74.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

75.     By the actions described above, Defendants deprived Plaintiff of his federal civil rights, including his Fourth Amendment right to be secure in his person against unreasonable searches and seizures, specifically his right to be free of false arrest.

76.     As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

77.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### Illegal Strip Search Under Section 1983

78.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

79.     By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free of unlawful searches of his person.

80.     The strip search of Plaintiff – an extreme invasion of privacy and bodily dignity – took place without probable cause to arrest Plaintiff, and without probable cause to believe that anything unlawful or suspicious was hidden in his rectum.

81.     As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Denial of the Right to a Fair Trial

82.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein

83.     By the actions described, the Defendants deprived Plaintiff of his right to a fair trial.

84.     The individual defendants fabricated allegations likely to influence a jury's decision and forwarded that information to the New York County District Attorney's Office.

85.     As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

### Failure to Intervene Under Section 1983

86.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

87.     Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

88.     The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

89.     As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SIXTH CLAIM

### Municipal Liability Under Section 1983

90.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

91.     By the actions described, the Defendant City deprived Plaintiff of his Fourth Amendment rights through its failure to train, supervise, and discipline mendacious and malicious officers; and through its fostering a culture of abuse and dishonesty among those who wield considerable power over the lives of everyday citizens.

92.     As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

a.    An order awarding compensatory damages for Plaintiff Denfield Joseph in an amount to be determined at trial;

b.    An order awarding punitive damages in an amount to be determined at trial;

c.    A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

d.    Such other and further relief as this Court may deem appropriate.

DATED:    January 14, 2017
New York, New York

_____s/_____
CYRUS JOUBIN, ESQ.
43 West 43rd Street, Suite 119
New York, NY 10036
(703) 851-2467
joubinlaw@gmail.com
**Attorney for Denfield Joseph**